

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-26-2009

# Neely v. US Postal Service

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-1473

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Neely v. US Postal Service" (2009). *2009 Decisions.* Paper 1987.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1987

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-1473
_____

KENT W. NEELY,

Plaintiff-Appellant

v.

US POSTAL SERVICE

Defendant-Appellee

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 03-cv-06566)
District Judge:  Honorable Mary A. McLaughlin

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 23, 2009

Before:  FISHER, JORDAN and VAN ANTWERPEN, Circuit Judges.

(Filed: January 26, 2009 )
_____

OPINION
_____

PER CURIAM

Kent W. Neely appeals pro se from the entry of summary judgment in favor of the

United States Postal Service (the "USPS"), on his claims of:  (i) employment

discrimination, harassment, and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), (ii) violations of the Family and Medical Leave Act (FMLA), (iii) due process, and (iv) retaliation and discrimination under Merit Systems principles and the Civil Service Reform Act of 1978 ("CSRA"). For the reasons that follow, we will affirm the District Court's judgment.

We assume the parties' familiarity with the facts, as fully described by the District Court in its Memorandum Opinion of December 12, 2007. Neely, a 54-year-old African-American and a disabled veteran, filed this suit asserting that the USPS discriminated against him on account of his race and gender by disciplining him from 1999 through 2002 and terminating him for chronic tardiness and absenteeism.[1] Neely complained that, in 1999, two female supervisors (Maria Diaz and Simona Brickers) disciplined him for chronic lateness and absenteeism because he refused their romantic advances. Neely asserted that the discipline he received led to his discriminatory removal in 2002 on account of his gender. As for his racial discrimination claim, Neely asserted that he was wrongly terminated on account of his race in 2002. He alleged that he was treated less favorably than two white employees, both of whom held the same type of position as

---

[1]Neely began working at the USPS in 1994. His first discipline for tardiness occurred in 1996. As of January 1999, Neely had already received two letters of warning and a seven day suspension for "failure to maintain a regular schedule." He filed a grievance challenging the seven-day suspension; the arbitrator upheld the discipline. From 1999 through 2002, Neely was disciplined at least four times for numerous incidences of tardiness or absenteeism. In 2001 alone, Neely had eighty-three unscheduled absences.

Neely and were disciplined for chronic tardiness and absenteeism. Neely also claims that USPS created a gender and race-based hostile work environment. He further contends that supervisors Holmes, Diaz and Brickers, and MDO Bates sought to discipline and remove him for retaliatory reasons, because he complained about race and gender discrimination to the EEOC and Congressman Chaka Fattah's Office, and because he notified a high-level manager within USPS about gender discrimination.

Neely claimed that the USPS wrongly denied him FMLA leave because he failed to obtain re-certification from his doctor to cover the leave requested. Neely's race and gender discrimination claims under Merits Systems principles and the CSRA are the same as those he raised under Title VII. Neely alleged that the USPS retaliated against him for whistle-blowing when he complained to the EEOC about discrimination and to the Department of Labor about FMLA violations. He asserted that he was denied sufficient notice or opportunity to remedy his disciplinary situation at work. Neely sought damages and backpay.

The USPS filed a motion for summary judgment, and Neely filed a counseled response in opposition. On December 12, 2007, the District Court entered summary judgment for the USPS. The District Court ruled that Neely failed to state a prima facie case of race discrimination under McDonnell Douglas v. Green, 411 U.S. 792 (1973), regarding his termination for chronic tardiness and absenteeism in 2002. Next, the District Court determined that Neely's gender discrimination claim against supervisors

Diaz and Brickers failed under the McDonnell Douglas test because Neely provided no evidence that Diaz or Brickers were involved in the decision to remove him. Turning to Neely's retaliation claim, the District Court ruled that Neely was engaged in protected activity but determined that he failed to show a causal connection between his protected activity and his termination. The District Court held that Neely failed to make out prima facie case of harassment on the basis of race or gender under Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993). The District Court also rejected Neely's FMLA and Merit Systems claims. The District Court granted summary judgment and dismissed Neely's action on December 12, 2007. Neely filed this timely appeal.

The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. This Court has jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over a grant of summary judgment, which (as the District Court explained) is appropriately entered only when "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

We find that the District Court's analysis and entry of summary judgment, are fully supported by the record. Neely raises no tenable argument in this appeal that the District Court did not thoughtfully and appropriately reject each of his claims upon proper application of the applicable legal standards. Neely's gender discrimination claim fails based on the undisputed fact that he was late or absent on the days for which he was disciplined by Diaz and Brickers. We agree with the District Court that he failed to

4

demonstrate a prima facie race-based discrimination claim. Neely's supervisor, Neel

Holmes, an African-American, issued a notice of removal based on sixteen instances of

tardiness and absenteeism that occurred from 1999 through 2002. The acting Manager of

Distribution Operations (MDO), Ernestine Geary, an African-American female, approved

the notice of removal. MDO Joseph Bates, a caucasian, issued the Letter of Decision,

terminating Neely's employment at the USPS. The District Court properly held that,

although Neely satisfied the first two prongs of the McDonnell Douglas test, there was no

record evidence of race-based discrimination. The Court noted Neely's undisputed long

history of chronic lateness and absenteeism leading up to his removal. The court found

that Neely knew that coming to work on time was a job requirement with which he failed

to comply. Moreover, the District Court pointed out that Neely's supervisor and MDO at

the time of his removal were African-Americans, a fact that, in combination with the

undisputed facts in the case, substantially weakened any inference of race-based

discrimination.

The District Court correctly held that Neely failed to show that he and his white

colleagues, USPS employees Dever and Masterson, who worked in comparable jobs in a

different part of the bulk mail center, were similarly situated. Neely contended that Dever

and Masterson were similarly situated to him because they had been disciplined by Maria

Diaz in the past and because some of the discipline they facedfor tardiness and

absenteeism over the years had been approved by the same MDO, Joseph Bates. Under

5

USPS's progressive discipline policy, the front-line supervisors, called "SDOs," exercised broad discretion in initiating discipline, deciding the manner of discipline, and settling grievances with respect to the discipline of the employees under their management. The MDOs, on the other hand, only became involved at the later stages of the progressive discipline process. In Neely's case, the common link between him and his two white comparators was that a supervisor, Maria Diaz, had been responsible for some of the disciplines imposed on the three men at different times in their employment. She was not involved, however, in Neely's termination or in Masterson's termination. The District Court properly found that Neel Holmes, the supervisor who initiated Neely's fourteen-day suspension and termination, never supervised Dever and Masterson. Holmes was not involved in disciplining Devers or Masterson and did not participate in the resolution of any of their grievances. MDO Bates served as the concurring officer on some of the disciplinary actions taken against Dever and Masterson throughout their respective employments at USPS. But he was not the concurring MDO in Neely's termination. Thus, we agree with the District Court that Devers and Masterson were not similarly situated to Neely for Title VII purposes because they did not share the same supervisor. See Pierce v. Commonwealth Life Ins. Co., 40 F.3d 796, 802 (6th Cir. 1994) (stating that, in order to show that comparators are "similarly situated," all relevant aspects of employment need to be nearly identical).

6

For essentially the same reasons that we find no evidence of gender-based or race based discrimination, we agree with the District Court's analysis and conclusion regarding Neely's hostile work environment claim, as there is no record evidence of conduct by his supervisors and MDO's from 1999 through 2002 that is "sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment." See Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993).

Turning to Neely's retaliation claim, in order to make out a prima facie claim of retaliatory discharge, he must show that (1) he was engaged in a protected activity; (2) the employer took an adverse employment action against him; and (3) there is a causal connection between his participation in the protected activity and the adverse employment action. See Nelson v. Upsala College, 51 F.3d 383, 386 (3d Cir. 1995). We agree with the District Court that Neely satisfied the first and second factors. No reasonable juror could conclude, however, that his engagement in protected activity and his termination were causally connected. The District Court properly rejected Neely's contention that the temporal proximity of his complaints in 1999 and 2002 and his discipline and removal in 2002, demonstrated the necessary causal connection. See Lauren W. ex rel. Jean W. v. Deflaminis, 480 F.3d 259, 267 (3d Cir. 2007) (to show a causal connection, a plaintiff must prove "either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link"). The court correctly reasoned that, given Neely's long

7

history of frequent tardiness and absenteeism, it was not surprising that there were short spans of time between his filing of EEOC complaints and subsequent disciplinary action. The District Court noted that the timing of the events could lead to the opposite inference, that Neely's chronic lateness triggered discipline, which, in turn, prompted him to file a complaint or grievance. The District Court also ruled that the e-mail from labor relations officer Joseph Marquis to MDOs Bates and Brickers in 2000, which said "We need to deal with [Neely] every time and come away with a progressive step[,] [n]ot get frustrated and let it pass then try to nail [him] months later," was irrelevant because it was sent a full two years before Neely's removal and there was no record evidence linking Marquis with Neely's disciplines or his removal.

We agree with the District Court that even if Neely established a prima facie case of retaliation, he failed to show that the reason for his removal was pretextual under McDonnell Douglas because Neely never denied that he was absent or late on the days for which he was disciplined and removed. See Moore v. City of Philadelphia, 461 F.3d 331, 342 (3d Cir. 2006) (explaining that Title VII retaliation claims, like discrimination claims, are similarly analyzed under the McDonnell Douglas framework).

Neely's claims of discrimination and retaliation under the Merit Systems principles and the CSRA are meritless for the substantially the same reasons that his related Title VII discrimination and retaliation claims lack merit. In particular, we agree with the District Court that none of Neely's EEO complaints or grievances played a role in USPS's

8

decision to remove him; thus, the Administrative Law Judge did not err when he concluded that the USPS would have taken the same removal action even if Neely had not complained. Neely's due process rights were not violated because the progressive nature of the discipline process at USPS provided Neely more than ample time to remedy his chronic lateness and absenteeism.

For the same reasons set forth by the District Court in its opinion, we find no merit to Neely's FMLA claims. See D.Ct. Op. at 27-34. Neely argues on appeal that the District Court erroneously relied on 29 C.F. R. § 825.203(a) of the FMLA regulations ("FMLA leave may be taken intermittently or on a reduced leave schedule") in denying his FMLA claims. He says that the District Court should have analyzed the merits of his FMLA claims pursuant to § 825.203(d) instead, which governs how intermittent leave may be taken. Neely relied on 29 U.S.C. § 2612(b)(1) (allowing intermittent leave "for a serious health condition") and 29 C.F.R. § 825.203(a) to support his claim in the District Court. See Memorandum in Opposition to the Defendant's Motion for Summary Judgment, at 36. Neely does not point to any evidence, and we find none on this record, that would change the result in this case had the District Court considered § 825.203(d).

For the foregoing reasons, we will affirm the District Court's judgment.